UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DIANN IACOBUCCI and DANIEL BURGERS, § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. 3:13-CV-1425-B |
| § | |
| WELLS FARGO, N.A. and US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST 2006-WFHE4, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WFHE4, § § § § § § § § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (doc. 4), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on April 17, 2013, by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and US Bank National Association ("USBNA") (collectively, "Defendants"), as Trustee for CitiGroup Mortgage Loan Trust 2006-WFHE4, Asset-Backed Pass-Through Certificates, Series 2006-WFHE4. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED.**

I.

BACKGROUND[1]

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Original Petition (doc. 1-3).

- 1 -

This case arises out of an attempted forced sale of Plaintiffs' homestead by Defendants. Plaintiffs challenge Defendants' action because they argue that the loan they obtained from Defendants did not comply with the Texas constitution and, as such, is invalid. In addition, they claim that Defendant Wells Fargo improperly advanced funds to pay off a separate loan that Plaintiffs had obtained for delinquent property taxes and then concealed its intent to force Plaintiffs to repay that amount within one year. More precisely, Plaintiffs are suing Defendants for: (1) violating Article XVI, Section 50(a) of the Texas constitution, by attempting a forced sale of property where the debt that formed the basis of the foreclosure was not obtained for a purpose allowable under Section 50(a); (2) by violating Article XVI, Section 50(a)(6)(Q)(x) of the Texas constitution by failing to correct non-compliance with the Texas constitution within sixty days of notification; (3) strict proof that USBNA is the Holder of the Note; (4) breach of contract; (5) violating the Texas Debt Collection Act by using unfair and unconscionable means to attempt to collect debt (Texas Finance Code § 392.303(a)(2)), and by using deceptive and misleading representations in connection with the collection (Texas Finance Code § 392.303(a)(19)); (6) violating the Texas Deceptive Trade Practices Act; and (7) fraud and fraudulent misrepresentation. Orig. Pet. 4-6. Plaintiffs request both declaratory and monetary relief for their claims.

A.   *Factual Background*

Plaintiffs Diann Iacobucci and Daniel Burgers (hereinafter "Plaintiffs") allege that on or about June 16, 2006, they refinanced their property located at 3110 Thomas Avenue #311, Dallas, Texas, and, subsequently, executed a Note and Deed of Trust for the benefit of Wells Fargo. Orig. Pet. 2, ¶ 10. The amount of the Note was $320,000, which Plaintiffs allege was more than 80% of the fair market value of the property. *Id.* at ¶ 11. On July 1, 2008, the adjustable rate mortgage for

the property increased significantly, and, during the same time period, Plaintiffs experienced immense financial hardship. *Id.* at 3, ¶ 12. Consequently, Plaintiffs contacted Wells Fargo to request a loan modification and were told that they must cease making payments for three months in order to have their loan modification request reviewed. *Id.* at ¶¶ 12-13. In reliance thereupon, Plaintiffs stopped making payments from November 2008 through January 2009, and then resumed payments from February 2009 through April 2009. *Id.* at ¶ 13.

In February of 2009, Plaintiffs obtained a loan from Abbott Tax Loans (the "Abbott Tax Loan") for outstanding property taxes in the amount of $42,000, to be paid over a period of approximately fifteen years. *Id.* at 3, ¶ 14. In June of 2009, Plaintiffs were informed by Wells Fargo that their modification was still pending because the Abbott Tax Loan created a superior lien on the property. *Id.* at ¶ 16. Wells Fargo then paid off the tax loan and rolled the amount paid into an escrow account. *Id.* Plaintiffs allege that Wells Fargo required that the entire amount in escrow be paid in a single year, which increased Plaintiffs' monthly payment from $2,651.73 to $7,281.80. *Id.* In addition, on August 14, 2009, Wells Fargo informed Plaintiffs that their loan modification request had been denied. *Id.* at 4, ¶ 17. On October 3, 2012, Defendants attempted a forced sale of the property by filing an application for an order of foreclosure. *Id.* at ¶ 19.

B.    *Procedural History*

Plaintiffs' Original Petition was filed on March 22, 2013, in the 160th Judicial District Court of Dallas County, Texas. Orig. Pet. Defendants removed the action to federal court, pursuant to 28 U.S.C. § 1441, on April 10, 2013. Notice of Removal. On April 17, 2013, Defendants filed a Motion to Dismiss (doc. 4), and Plaintiff filed a Response (doc. 19) on July 10, 2013. Defendants submitted a Reply (doc. 20) on July 26, 2013. The Motion has been fully briefed and is now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Defendants move to dismiss each of Plaintiffs' claims. The Court reviews the adequacy of the

pleadings of each of these claims, in turn, below.

A.   *Texas Constitution Article XVI, Section 50(a)(6)*

Plaintiffs assert two claims against Defendants for violations of the Texas constitution. Orig. Pet. 4. First, they argue Defendants violated Article XVI, Section 50(a)(6)(B) because the loan from Wells Fargo was more than 80% of the fair market value of their property. *Id.* at 2. Next, they claim that Defendants violated Article XVI, Section 50(a)(6)(Q)(x) because Defendants failed to correct their initial violation within sixty days of being notified by Plaintiffs. *Id.* Consequently, Plaintiffs insist that all of the principal and interest on the loan should be forfeited. Pls.' Resp. 2-3. Defendants disagree and argue that Plaintiffs have no cause of action under Section 50(a). Defs.' Br. 4. In addition, they claim that Plaintiffs are time-barred because their action comes more than four years after the loan was originated. *Id.* at 5.

The Texas constitution protects a homestead from forced sale for the payment of a debt arising from an extension of credit that, when added to the aggregate of outstanding principal balances of other indebtedness secured against the homestead, exceeds 80% of the fair market value thereof. Tex. Const. art. XVI, § 50(a)(6)(B). If a lien is made in contravention of this (or any other) constitutional requirement, the Texas constitution provides for cure. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013). In particular, "[u]nder Section 50(a)(6)(Q)(x), a party may give notice of a defect, and the other party has sixty days" to remedy. *Id.* The Fifth Circuit has recognized that there is a four-year limitations period for constitutional infirmities under Section 50(a)(6), which begins to run from the closing of the lien. *See id.* at 674-75. Once this period of limitations has passed, the lien is no longer voidable and is valid. *Id.* at 678 ("[T]he lien becomes valid after the period of limitations passes, so the 'harm' is, in effect, erased."); *see also Skinner v. Wells*

*Fargo Bank, N.A.*, No. H-13-2613, 2013 WL 5781244, at *3 (S.D. Tex. Oct. 25, 2013).[2]

Plaintiffs concede they refinanced their home and executed a Note of Deed of Trust with Wells Fargo on June 16, 2006. Orig. Pet. 2 at ¶ 9. Thus, they had until June 16, 2010 to bring their claims against Defendants. However, they did not file this action until March 22, 2013, almost three years after the limit. Orig. Pet. Consequently, the Plaintiffs' claim under Section 50(a)(6)(B) is time-barred. In addition, the Court notes that Plaintiffs also waited until the same date in March 2013 to notify Defendants of their alleged violation.[3] Orig. Pet. 4, ¶ 18. Thus, Plaintiffs' attempt to avail themselves of the Texas constitution's "cure" under claim Section 50(a)(6)(Q)(x) was similarly untimely. Accordingly, the Court dismisses both of Plaintiffs' claims for failure to state a cause of action. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[A] complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action.").

B.  *"Show-me-the-Note" Argument*

The Court now considers Plaintiffs' demand for Defendant USBNA to provide the Original Note to prove that it is a holder in due course. Orig. Pet. 5. Plaintiffs insist that, "absent production by Defendant [USBNA] of the Original Note with all the necessary assignments, . . . the Deed of Trust and lien claimed by Defendant on Plaintiffs' property is not valid because Defendant cannot

---

[2] The Court recognizes that Plaintiffs challenge the soundness of the decision in *Priester*. However, this Court is bound by decisions of the Fifth Circuit, and Plaintiffs have not presented any subsequent Texas supreme court authority that directly contradicts the holding in *Priester*. Consequently, *Priester* controls this Court's determination. *See Skinner,* 2013 WL 5781244, at *2 (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 421 (5th Cir. 2001) ("This Court's interpretation of Texas law is binding on the district court, unless a subsequent state court decision or statutory amendment renders our prior decision clearly wrong.")).

[3] Plaintiffs allege that they tendered written notice to Defendants of their constitutional violation on March 22, 2013, the same date this lawsuit was filed in state court. Orig. Pet. 4.

prove that they [sic] are the Holder in Due Course of the Note." Orig. Pet. 7, ¶ 36. Defendants dismiss this argument as the faulty "show-me-the-note" theory that has been "roundly rejected" by the courts. Defs.' Br. 7.

This Court has previously acknowledged that "[c]ourts in Texas have repeatedly recognized that Texas law allows either a mortgagee or a mortgage servicer to administer a deed of trust foreclosure without production of the original note." *Amaro v. US Bank Nat'l Ass'n*, No. 3:12-CV-3776-B, 2013 WL 1187284, at *2 (N.D. Tex. Mar. 22, 2013) (quoting *Cannon v. JP Morgan Chase Bank, N.A.*, 4:11-CV-458, 2011 WL 6838615, at *5 (E.D. Tex. Nov. 16, 2011) (collecting cases)); *see also* Tex. Prop. Code §§ 51.002(b), (d), 51.0025. In order to foreclose under Texas law, the mortgagee need only provide: (1) notice of default, with an opportunity to cure, and (2) notice of the actual foreclosure sale. *See Amaro*, 2013 WL 1187284, at *2; Tex. Prop. Code §§ 51.002(b), (d), 51.0025. A mortgagee under Texas law is defined, *inter alia*, as "the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4)(C).

Here, Wells Fargo was both the original lender of the Note and the original mortgagee under the Security Instrument. Defs.' Ex. A (Texas Home Equity Adjustable Rate Note); Defs.' Ex. B (Texas Home Equity Security Instrument). On June 16, 2009, Wells Fargo lawfully assigned both the Note and the Security Instrument to USBNA. Defs.' Ex. C (Assignment of Note and Deed of Trust). As "the last person to whom the security interest was assigned of record," USBNA thus qualifies as the mortgagee under Texas law. Tex. Prop. Code. § 51.0001(4)(C); *Amaro*, 2013 WL 1187284 at *2. Consequently, USBNA was permitted to administer the deed of trust foreclosure. Plaintiffs' claim otherwise and their insistence that USBNA provide the Original Note are unfounded. Accordingly, the Court dismisses Plaintiffs' claim for declaratory relief regarding the

Note.

C.   *Breach of Contract*

Plaintiffs' next claim is for breach of contract. Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997).

Regrettably, Plaintiffs do not fully develop their argument with respect to this claim. They appear, however, to be alleging two breaches. First, Plaintiffs maintain that Wells Fargo breached Section 4 of the Security Instrument, by paying off the Abbott Tax Loan after Plaintiffs had agreed in writing to pay the loan in a manner acceptable to Wells Fargo. Pls.' Resp. 6-7. Plaintiffs claim that the Abbott Tax Loan was a continuation of a tax loan they had been maintaining for years with full knowledge of Wells Fargo, and it was only once they sought a modification from Wells Fargo that the bank took issue with the tax loan. *Id.* at 7. The Plaintiffs suggest that the tax loan had been permitted under Section 4 and Defendants were thereby precluded from repaying it. Defendants argue that Plaintiffs have not cited any provision of the Security Instrument that prohibits Wells Fargo from paying off the loan. Defs.' Br. 8. Further, they insist that repayment was within their rights under Section 9 of the Security Instrument because Plaintiffs were already in default under the Security Instrument, and the Abbott Tax Loan created a lien against the homestead that was superior to Defendants' pre-existing security interest. Defs.' Br. 9. Paying off the loan was thus a permissible way to protect their interest in the property. Defs.' Reply 3.

Plaintiffs' argument is unpersuasive. Section 4, entitled "Charges; Liens.," discusses the *Borrower's* obligations under the Security Instrument, including to "pay all taxes, assessments,

charges, fines, and impositions attributable to the Property which can obtain priority over this Security Instrument . . . ." Defs.' Ex. B, APPENDIX 20, ¶ 4. Further, it requires Borrower to "promptly discharge any lien which has priority over this Security Instrument" unless Borrower has met requirements regarding repayment or other listed conditions. *Id.* at APPENDIX 21. Nowhere, though, does Section 4 discuss *Lender's* obligations. Indeed the only time Section 4 mentions Lender's actions the language is permissive: "If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender *may* give Borrower a notice identifying the lien." *Id.* (emphasis added). Because Section 4 is silent with respect to Borrower's obligations, the Court finds that it cannot support Plaintiffs' claim that Wells Fargo breached its duties thereunder. As this is the only section that Plaintiffs highlight with respect to Wells Fargo's repayment of the Abbott Tax Loan, the Court agrees with Defendants that Plaintiffs have failed to show any provision of the Security Instrument that prohibited Wells Fargo's action. Consequently, the Court dismisses Plaintiffs' claim of breach with respect to Wells Fargos' repayment of the tax loan.

This leaves Plaintiffs' second claim of breach, namely that Wells Fargo acted in violation of Section 9 by requiring Plaintiffs to repay the amount it advanced in one year instead of over the life of their pre-existing debt. Orig. Pet. 5; Pls.' Resp. 7. Plaintiffs argue that, because the amount Wells Fargo paid should have became additional debt secured by the Security Instrument, it should have been amortized through July 2036. Pls.' Resp. 7. Defendants argue that nothing in the Security Instrument requires an escrow advance to be amortized over the life of the loan, even if it becomes additional debt under the Security Instrument. Defs.' Reply 3. Further, they contend that it is the Real Estate Settlement Procedures Act–not the Security Instrument–that governs repayment of

escrow advances. *Id.*

The Defendants are correct that the Real Estate Settlement Procedures Act ("RESPA"), 24 C.F.R. § 3500.17 (West 2013), governs the repayment of escrow advances. Further "[i]f a servicer advances funds for a borrower, then the servicer must perform an escrow account analysis" to determine if there is either a surplus, shortage or deficiency. 24 C.F.R. § 3500.17(b). The escrow account analysis requires that the servicer: (1) determine the appropriate target balances; (2) compute the borrower's monthly payments to maintain the account; and (3) determine whether shortages, surpluses or deficiencies exist. *Id.* According to RESPA, a "[d]eficiency is the amount of a negative balance in an escrow account." *Id.* Furthermore, if it has been established that the borrower is in default and that there is a deficiency greater than or equal to one month's escrow payment, the servicer may allow the deficiency to exist or may require the borrower to repay the deficiency in no more than two equal monthly payments. 24 C.F.R. § 3500.17(f)(4)(ii).

Plaintiffs concede that Defendants "paid off the tax loan" and then "rolled the amount paid into an escrow account . . . ." Orig. Pet. 3, ¶ 16. Wells' Fargo's repayment of the Abbott Tax Loan thus created a deficiency. *See* 24 C.F.R. § 3500.17(b). Under Section 3 of the Security Instrument, "[i]f there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but *in no more than twelve monthly payments*." Defs.' Ex. B, APPENDIX 20, ¶ 3 (emphasis added). Plaintiffs have made no allegation that Wells Fargo failed to notify them in accordance with RESPA. Thus, the Court must conclude that Wells Fargo fulfilled its obligation thereunder, and Plaintiffs were therefore obliged to repay Wells Fargo the amount of deficiency within one year. Accordingly, Plaintiffs' claim that Defendants breached the Security

Instrument by requiring accelerated repayment is without merit.[4] The Court therefore dismisses Plaintiffs' claim of breach of contract with respect to the amortization of the Abbott Tax Loan.

D.    *Texas Debt Collection Act*

The Court now considers Plaintiffs' next claim that Defendants violated the Texas Debt Collection Act ("TDCA"). Tex. Fin. Code. §§ 392.001 *et seq.* Plaintiffs allege that "Wells Fargo's attempt to collect the amount of the tax loan within one year" as opposed to over the life of their pre-existing debt was a violation of Texas Finance Code § 392.303(a)(2). Pls.' Resp. 7, ¶ 15. Further, they claim that Defendants used "deceptive and misleading representations through promising a modification if Plaintiffs stopped making payments," in violation of Texas Finance Code § 392.303(a)(19). *Id.* The Court will discuss each alleged violation in turn.

   1.    § 392.303(a)(2)

Subsection 392.303 of the TDCA concerns unfair or unconscionable means of debt collection. In particular, subsection (a) prohibits debt collectors from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation

---

[4] Because the Court finds Defendants were permitted under Section 3 and RESPA to demand repayment within one year, it does not find Plaintiff's reliance on Section 9 appropriate. Pls.' Resp. 7. However, even assuming, *arguendo*, that Plaintiffs are correct that "Wells Fargo could have paid off the tax loan in accordance with [Section] 9 of the Security Instrument," their claim still fails. *Id.* Though Section 9 states, as Plaintiffs aver, that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument, " it does not end there. Defs.' Ex. B, APPENDIX 23, ¶ 9; *see* Pls.' Resp. 7. The section goes on to state: "These amounts shall bear interest at the Note rate from the date of disbursement and *shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.*" Defs.' Ex. B, APPENDIX 23, ¶ 9(emphasis added). Nowhere do Plaintiffs explain how this provision–or any other–requires Defendants to amortize the advance over the life of the loan. Instead, they offer only conclusory remarks that Defendants have breached their obligation under the Security Instrument for requiring payment within a year. Even considering the allegation in the light favorable to Plaintiffs, this is not enough to state a claim. *See Iqbal*, 556 U.S. at 678.

or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2). Plaintiffs allege initially that Wells Fargo violated this provision by attempting to collect an amount, presumably the Abbott Tax Loan, that was not expressly authorized by the agreement creating the debt. Orig. Pet. 6, ¶ 30(a). Their brief, however, argues a different point–that Wells Fargo's violation was its attempt to collect the tax loan within one year instead of over the term of their pre-existing debt. Pls.' Br. 7, ¶ 15. Defendants insist that Wells Fargo was entitled under the Security Instrument to require payment as it did. Defs.' Br. 10.

Because the Court has already found that Security Instrument not only contemplated the existence of escrow deficiencies such as the one at issue but also discussed their repayment, Plaintiffs' allegation that the Abbott Tax Loan was not expressly authorized by the agreement (or legally chargeable to the consumer) is unconvincing. Further, its claim that Wells Fargo acted unlawfully by requiring payment within one year is similarly unpersuasive. It is not clear to the Court that Section 392.303(a)(2) addresses the timing issue at hand. Indeed the thrust of the provision seems to be whether debts are authorized, not the manner in which they are collected. To the extent Plaintiffs are relying on the subsection's broader protection against "unfair or unconscionable" means of collection, the Court still finds Plaintiffs have failed to state a claim. Plaintiffs have not advanced a single argument that this accelerated repayment, which the Court has already found permissible under RESPA and the Security Instrument, is either of the proscribed means with which this subsection of the TDCA is concerned. Consequently, the Court dismisses Plaintiffs' claim with respect to Subsection 392.303(a)(2).

2.   § 392.304(a)(19)

As a threshold matter, it must be noted that Plaintiffs second claim relates to an alleged

violation of § 392.303(a)(19), however there is no such provision. In light of Plaintiffs' pleading and brief, the Court assumes that they intended instead to allege a violation of § 392.304(a)(19). *See* Orig. Pet. 6, ¶ 30(b); Pls.' Br. 7, ¶ 15.

Subsection 392.304(a)(19) "operates effectively as a 'catch-all' provision" and prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Woods v. Bank of America, N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. April 17, 2012). "For a statement to constitute a misrepresentation under the TDCA, a defendant must have made a 'false or misleading assertion.'" *Smith v. Wells Fargo Bank, N.A.*, No. 3:12-CV-4633-K-BN, 2013 WL 3324195, at *13 (N.D. Tex. June 28, 2013) (quoting *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 667 (N.D. Tex. Nov. 24, 2010)). In their brief, Plaintiffs argue that Wells Fargo collected its debt through deceptive and misleading representations, namely "through promising a modification if Plaintiffs stopped making payments, thereby creating a default when none existed before." Pls.' Br. 7, ¶ 15. However, as Defendants point out, this allegation is contradicted by the very facts alleged in Plaintiffs' Original Petition. In their pleading, Plaintiffs state:

> 13. . . . Plaintiffs were told by Wells Fargo that in order *to be eligible to have their modification request reviewed*, they would have to stop making payments for three months.
>
> . . .
>
> 34. . . . Defendants told Plaintiffs that the only way they *could qualify for a loan modification* was to stop making payments on their mortgage.

Orig. Pet. 3, 6 (emphasis added). There is a considerable difference between promising review of one's loan modification request and promising the actual modification. From the factual account

provided by Plaintiffs, Wells Fargo only made the latter commitment and indeed honored its promise. Here again the Court need only look to Plaintiffs' own pleading, which states that between April and June 2009 they "were repeatedly told [by Wells Fargo] that their file was being reviewed," and finally on August 14, 2009, they were notified that their loan modification request had been denied. *Id.* at 3-4. Nothing here indicates that Wells Fargo made a false or misleading assertion. Rather it is clear that Wells Fargo promised Plaintiffs it would review their loan request, did so, and ultimately denied them the modification. There is no indication this behavior was in fact false or misleading. Consequently, the Court dismisses Plaintiffs' claim of misrepresentation under the TDCA.

E.   *Texas Deceptive Trade Practices Act*

The Court next considers Plaintiffs' claim under the Texas Deceptive Trade Practices Act ("DTPA"). Orig. Pet. 6; Tex. Bus. & Comm. Code § 17.50(h). Plaintiffs argue that, because Defendants violated the TDCA, they are also guilty of violating the DTPA via a tie-in statute. Orig. Pet. 6; *see* Tex. Bus. & Comm. Code § 17.50(h); Tex. Fin. Code § 392.404. Defendants disagree and reiterate that they did not violate the TDCA and thus Plaintiffs have no grounds for their DTPA claim. Defs.' Br. 10. Further, they argue that Plaintiffs are not "consumers" within the meaning of the DTPA and do not qualify for relief thereunder. *Id.*

The DTPA "grants 'consumers' a cause of action for false, misleading, or deceptive acts or practices." *Marketic v. U.S. Bank, N.A.*, 436 F. Supp. 2d 842, 854 (N.D. Tex. June 15, 2006). In particular, "the DTPA tie-in statute, § 17.50(h) of the Business & Commerce Code, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCA." *Id.*; *see* Tex. Bus. & Com. Code § 17.50(h); Tex. Fin. Code § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is

actionable under that subchapter."). Thus, a plaintiff requesting relief under the DTPA tie-in statute must establish that he qualifies as a "consumer" within meaning of the Code, and that there was a violation of the TDCA that has given rise to his cause of action.

The Court agrees with Defendants that Plaintiffs' claim here again must fail. First, the Court finds that Plaintiffs do not qualify as "consumers" under the DTPA. "[M]erely obtaining a loan or an extension of credit does not qualify one as a 'consumer.'" *Marketic*, 436 F. Supp. 2d at 855. Indeed, courts have already found that "one who obtains a home equity loan does not obtain a 'good' or a 'service' to qualify as a consumer the DTPA." *Id.* (citing *Grant-Brooks v. Wilshire Credit Corp.*, No. 3:02-CV-2455-A, 2004 WL 1194462, at *5 (N.D. Tex. May 27, 2004)); *see La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984). Where courts have found that borrowers could bring claims under the DTPA it was because the borrowers sought to purchase or lease a good or service, not simply to borrow money. *See La Sara Grain Co.*, 673 S.W.2d at 566-67 (citing *Knight v. Int'l Harvester Credit Corp.*, 627 S.W. 2d 382, 389 (Tex. 1982); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W. 2d 705 (Tex. 1983)). Here, Plaintiffs' claim is based on their mortgage loan and the debt added thereto. Their objective with respect to both loans was to receive money, not to purchase a good or service. As such they are not "consumers" under the DTPA, and they lack standing to bring their claim.[5] Accordingly, the Court dismisses Plaintiffs' DTPA cause of action.

F.   *Fraud and Fraudulent Misrepresentation*

The Court now considers Plaintiffs' final cause of action for fraud and fraudulent

---

[5] The Court notes that even if Plaintiffs were "consumers" within the meaning of the DTPA, their claim would still fail because they have failed to state a claim for their underlying cause of action–Wells Fargo's alleged violation of the TDCA.

misrepresentation. Orig. Pet. 6. Plaintiffs allege Defendants made three misrepresentations on which they relied: (1) Wells Fargo told them the only way they could qualify for a loan modification was to stop making payments on their mortgage; (2) Wells Fargo said Plaintiffs' modification could not be approved until the Abbott Tax Loan was paid; and (3) Wells Fargo wrongfully concealed its intent to force Plaintiffs to repay the Abbott Tax Loan within one year. *Id.* But for these alleged fraudulent misrepresentations, Plaintiffs claim they "would not be facing foreclosure and the ruination of their credit rating." *Id.* at 6-7. Not surprisingly, Defendants dispute this claim and argue that the real cause of Plaintiffs' foreclosure and failing credit was their own financial hardships, which predated and were unrelated to Defendants' actions. Defs.' Br. 12-13. Thus, Defendants insist that Plaintiffs' fraud-related claims must fail because they cannot establish the causation element of the tort.

The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009). In addition, "[a] promise of future performance constitutes

an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Aquaplex, Inc.*, 297 S.W.3d at 774 (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2001); Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (citations and internal quotations omitted). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Reviewing Plaintiffs' pleading and response brief, it is clear that they fall well short of the requirements for stating a claim of fraud. Not only do Plaintiffs fail to state specifically who made the alleged misrepresentations or when and where they were made, they also fail to explain "why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Instead Plaintiffs list alleged misrepresentations by Defendants and then aver that they were harmed when they relied thereon. Pl. Orig. Pet. 6. Plaintiffs never assert, much less support, the contention that the statements were untrue. Indeed the Court has already found that Wells Fargo honored its promise to review the loan modification request once Plaintiffs stopped paying their mortgage. With respect to the claim that Plaintiffs' modification request could not be approved unless the Abbott Tax Loan was repaid, the Court finds nothing in the Plaintiffs' filings to suggest this was not true.

Finally, regarding the alleged failure to disclose, Plaintiffs do not identify any duty Defendants had to reveal their intent to demand repayment within a year. *C.f. Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010)("Silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent.")(internal quotations omitted). What's more, the Court has already found that the Security Instrument made clear that escrow deficiencies would have to be repaid in no more than twelve months. *See* Defs.' Ex. B, APPENDIX 20, ¶ 3. Thus Plaintiffs were already on notice that the additional debt would have to be repaid within a year, and they identify no duty Defendants had to specify exactly how they would require repayment. It is unclear how Plaintiffs were in any way misled by Defendants' alleged nondisclosure.

It should also be noted that Plaintiffs' tort claims of fraud and misrepresentation are incident to a contract between the parties and, as such, may not be suitable for a tort cause of action. "Texas courts consistently have prohibited tort claims if the parties' relationship and attendant duties arise from a contract." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F.Supp.2d 616, 625-26 (N.D. Tex. August 21, 2011). Plaintiffs' allegations arise from a contractual dispute; indeed all claims flow from their mortgage and Defendants' attempt to foreclose thereon. Accordingly, notwithstanding the deficiencies in their pleading, a tort cause of action is likely otherwise unavailable. *See i2 Techs., Inc. v. DARC Corp.*, No. 3:02-CV-327-H, 2003 WL 22205091, at *5–6 (N.D. Tex. Sept. 23, 2003)("Under Texas law, 'a party may only maintain a tort action, other than fraudulent inducement, in addition to a breach of contract action if the tort action is independent of the contract action.'")(quoting *Yzaguirre v. KCS Resources, Inc.*, 47 S.W.3d 532, 543 (Tex. App.–Dallas 2001, pet. denied, 66 S.W.3d 212 (Tex.2000)).

For all of these reasons, Plaintiffs' claims of fraud and fraudulent misrepresentation must be dismissed.

## IV.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss (doc. 4) is **GRANTED**. Plaintiffs' claims and this case are **DISMISSED with prejudice**.

**SO ORDERED.**

**SIGNED: November 15, 2013.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE